## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION | MDL No. 1:23-md-03083-ADB-PGL |

This Document Relates To:

1:23-cv-12478
1:23-cv-12281
1:23-cv-12561
1:23-cv-13079
1:24-cv-11523
1:23-cv-12226
1:23-cv-12273

## DECLARATION OF JUSTIN PARKS OF A.B. DATA IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

I, Justin Parks, declare as follows:

1.      I am a Vice President with A.B. Data, Ltd. ("A.B. Data"). I am fully familiar with the facts contained herein based upon my personal knowledge, and if called as a witness, could and would testify competently thereto. Co-Lead Counsel has retained A.B. Data to act as Settlement Administrator in this case after a competitive bidding process. I submit this Declaration at the request of Co-Lead Counsel in connection with the above-captioned action (the "Action").

2.      At the request of Co-Lead Counsel, I prepared a proposed notice plan ("Notice Plan") for this litigation. This Declaration will describe the proposed Notice Plan and how it will meet Rule 23 of the Federal Rules of Civil Procedure and due process requirements. This Declaration is based upon my personal knowledge and upon information provided to me by Co-Lead Counsel, my associates, and A.B. Data staff members.

3.      A.B. Data has implemented and coordinated some of the largest and most complex notice and administration plans in the country. The scope of our work includes notification, claims processing, and distribution plans in all types of class actions. In addition, members of our team

have administered many noteworthy data breach and consumer privacy matters in recent years, including: *In re: Vizio Consumer Privacy Litigation*, No. 8:16-ml-02693 (C.D. Cal.); *In re: Google LLC Street View Electronic Communications Litigation*, No. 10-md-02184 (N.D. Cal.); *The State of Indiana v. Equifax Data Breach Settlement*, No. 49D01-1905-PL-018398 (Super. Ct., Ind.); *Barr v. Drizly, LLC f/k/a Drizly, Inc.*, 1:20-cv-11492 (D. Mass.); *Atkinson v. Minted*, 3:20-cv-03869 (N.D. Cal.); *Rosenbach v. Six Flags Entertainment Corporation and Great America LLC*, No. 16-CH-13 (Cir. Ct. Ill.); *Avetisyan v. United Health Centers of San Joaquin Valley*, No. 22-CEG-285 (Fresno Co. Super. Ct.); *Limbaugh v. Norwood Clinic*, No. CV-2022-900851.00 (Jefferson Co. Ala.); and *In re: CentraState Healthcare Data Security Incident Litigation*, No: MON-L-504-23 (N.J. Super. Ct.).

4.    A.B. Data has also been appointed as notice, claims, and/or settlement administrator in hundreds of large consumer, antitrust, securities, ERISA, insurance, and government agency matters. A profile of A.B. Data's background and capabilities, including representative case and client lists, is included as **Exhibit A**.

## CAFA

5.    A.B. Data understands that Nuance Communications, Inc. ("Nuance") will be responsible to provide notice as required by CAFA, 28 U.S.C. § 1715. If needed, A.B. Data may assist with preparing and mailing the CAFA notice.

## NOTICE PLAN OVERVIEW

6.    The objective of the Notice Plan is to provide the best notice that is practicable under the circumstances to Settlement Class Members. The proposed Notice Plan uses customary procedures that have been widely adopted in class actions with a comprehensive list of class member data.

7.    I understand from Co-Lead Counsel that Nuance will provide a list of Settlement Class Members and their contact information, including mail email and mailing addresses, to the extent available (the "Class List"). It is our understanding that the Class List will likely have approximately 1,225,000 records prior to any deduplication, cleaning, or other processing intended

to improve reliability. Also, for records with only a mailing address available on the Class List, A.B. Data will utilize standard tools to attempt to locate email addresses for these Settlement Class Members.

8.  The Notice Plan uses direct notice to inform Settlement Class Members about the Settlement. A dedicated case-specific website, email address, and toll-free telephone number will serve as additional resources for Settlement Class Members.

### *Direct Notice*

9.  Since such robust contact information is available, sending direct notice to these users is likely to reach as many potential Settlement Class Members as possible and would be the best notice practicable under the circumstances.

10.  A.B. Data will send the Short Form Notice, formatted as an email ("Email Notice"), to the Settlement Class Members for whom an email address is available or can be located. The Email Notice will include a unique PIN number that Settlement Class Members can use when filing their Claim Forms that will help validate their claims. This notice will also feature embedded links to the case-specific website where Settlement Class Members will be able to access the detailed Long Form Notice, Claim Form, frequently asked questions, important dates and deadlines, and other relevant information about the case.

11.  Prior to sending the Email Notice, A.B. Data will perform several tasks to maximize deliverability. These tasks include running the list of recipient email addresses through a deliverability analysis to ensure the email addresses are valid and working with our email service providers to develop sending strategies to achieve optimal deliverability. A.B. Data will also incorporate email best practices. The subject line, sender, and message content will be designed to encourage readership and exclude words or phrases known to trigger SPAM or junk filters. The Email Notice will be in an embedded html text format, without attachments and other potentially challenging elements, to make it less likely email service providers will block the message. The Email Notices will be programmatically authenticated, so providers can verify that they are being

DECLARATION OF JUSTIN PARKS OF A.B. DATA IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

sent from A.B. Data's authorized mail servers. The Email Notice may also be delivered in tranches over a period of time, as necessary, to maximize the number of successful deliveries.

12.    A.B. Data will send the Short Form Notice, formatted as a double postcard ("Postcard Notice"), by First-Class Mail to Settlement Class Members with only a known mailing address and those with a mailing address whose email addresses are determined to be invalid. The Postcard Notice will be formatted as a sealed double postcard to facilitate privacy of Settlement Class Member information and also include a unique PIN number for Settlement Class Members to use when filing their Claim Forms.

13.    Prior to mailing, A.B. Data will standardize and update all mailing addresses through the United States Postal Service ("USPS") national change of address ("NCOA") database. For Class Members with a registered change of address, A.B. Data will mail a Postcard Notice to the updated mailing address provided by the USPS.

14.    For any Postcard Notice returned to A.B. Data by the USPS as undeliverable as addressed ("UAA") with a forwarding address provided, A.B. Data will promptly remail the Postcard Notice to the forwarding address. For any UAA Postcard Notice returned with no forwarding address provided, A.B. Data will search for an updated address using an information provider to which we subscribe.  If an updated address is available, A.B. Data will promptly remail the Postcard Notice to the updated address.

15.    Prior to the claims deadline, A.B. Data will also send a reminder email ("Reminder Email Notice") to the Settlement Class Members for whom an email address is available or can be located.

16.    The Short Form and Long Form Notices will include information concerning the Settlement, including: that this is a class action; a plain and engaging headline describing the Settlement Class; the Settlement Class definition; that the Settlement Class claims privacy and consumer protection and other laws were broken; that the lawsuit will provide payments to eligible Settlement Class Members who file claims; that a Settlement Class Member may appear through an attorney if they want; that Settlement Class Members can request exclusion or object; the

process and deadlines to file a claim, request exclusion, and object; and the binding effect of a Class judgment. The Short Form, Long Form, and Reminder Notices are attached as Exhibits E-G to the Settlement Agreement.

## WEBSITE

17.    A.B. Data will implement and maintain a case-specific website for this matter. The website will be simple to navigate and will provide, among other things, a summary of the case, answers to frequently asked questions, information about Settlement Class Members' rights and options, the relevant pleadings and key documents outlined within the Settlement Agreement, important dates, functionality for Settlement Class Members to submit their claims online, and any pertinent updates. The case-specific website will be secure, with an "https" designation.

## TOLL-FREE TELEPHONE NUMBER AND EMAIL ADDRESS

18.    A.B. Data will establish and maintain a dedicated toll-free telephone number and email address to answer Settlement Class Member questions and provide additional information about the Settlement.

19.    The toll-free telephone number will be equipped with an automated interactive voice response ("IVR") system. The IVR system will present callers with a series of choices to hear prerecorded information about the Settlement. If callers need further help, they have the option to speak with a live operator during business hours. After business hours, callers may leave a voicemail message, and their call will be returned the following business day.

20.    The toll-free telephone number, email address, and case-specific website address will be displayed in the Summary and Long Form Notices and Claim Form.  Both the toll-free number and email address will appear on the case-specific website.

## EXCLUSION PROCESSING

21.    The Long Form Notice includes specific instructions on how to request exclusion from the Settlement Class.  A.B. Data will receive, process, and report all exclusion requests and circulate copies to the parties.

## CLAIMS ADMINISTRATION

22.     A.B. Data will also provide claims administration services in accordance with the Settlement Agreement and Court-approved Settlement Benefits Plan.  These services include setting up, administering, and preparing a tax return for the Qualified Settlement Fund ("QSF"); processing each submitted Claim Form; preparing and sending deficiency/eligibility notifications; determining the amount of each Claim Payment due; and providing a payment, via check or an electronic payment platform to each Authorized Claimant.  A.B. Data may also provide additional services upon the parties' request.

23.     Settlement Class Members who wish to be potentially eligible to receive a payment from the Settlement Fund will be required to complete and submit a properly executed Claim Form no later than the claims-submission deadline established by the Court either by mail or online through the case-specific website.

24.     A.B. Data will review each Claim Form upon receipt to verify that all required information was provided. Information provided with each Claim will be reviewed for accuracy. A.B. Data will process each Claim in accordance with the Court-approved Settlement Agreement, Settlement Benefits Plan, and/or relevant Court orders.

25.     If a Claim is determined to be defective, A.B Data will send a deficiency notification to the claimant, via letter or email, that describes why the Claim is deficient and including, where applicable, what is necessary to cure the deficiency. The deficiency notification will also advise claimants how much time they have to submit the appropriate information and/or documentary evidence to complete/cure their Claim. If claimants do not cure the deficiency in their Claim, their Claim will be recommended for rejection (in whole or in part). The deficiency notification will also advise claimants of their right to contest A.B. Data's administrative determination with respect to their Claim.

26.     After the Claims (and responses to deficiency notifications) are fully processed, quality assurance reviews performed, and final administrative determinations made as to which

Claims are valid, A.B. Data will distribute the Net Settlement Fund proceeds to Authorized Claimants upon Court approval.

27.    Authorized Claimants will be provided an opportunity to request their payment by check or digital payment.  Distributions from the Net Settlement Fund will be sent to Authorized Claimants based on their preference and in accordance with the timeframes and provisions established in the Court-approved Settlement Agreement and Settlement Benefits Plan.

## **DATA PRIVACY AND SECURITY**

28.    A.B. Data has numerous control systems and procedures in place that it believes meet or exceed relevant industry standards, to securely handle class member data. A summary of those systems and procedures (including technical, administrative, and physical controls; retention; destruction; audits; crisis response; etc.) is attached as **Exhibit B**.

29.    A.B. Data accepts responsibility for the security of class member information and claimant data; accurate calculation of claims pursuant to a Court-approved plan of allocation, subject to the guidance of the parties; and accurate distribution of funds pursuant to relevant Court Orders. All case data provided to A.B. Data by the parties and/or Settlement Class Members will be used solely for the purpose of effecting notice and claims administration. Specifically, Settlement Class Members' information will not be used, disseminated, or disclosed by or to any other person for any other purpose.

30.    A.B. Data will continue to host and maintain the case data until otherwise instructed in writing by the parties to delete, archive, or return such data. When a customer requests that A.B. Data delete or destroy all data, A.B. Data agrees to delete or destroy all such data; however, A.B. Data may retain data as required by applicable law, rule, or regulation, and to the extent such copies are electronically stored in accordance with A.B. Data's record retention or back-up policies or procedures (including those regarding electronic communications) then in effect.

## **CONCLUSION**

31.      It is my opinion, based on my individual expertise and experience, and that of my A.B. Data colleagues, that the proposed Notice Plan is designed to effectively reach Settlement Class Members and will deliver notices that will capture Settlement Class Members' attention and provide them with the necessary information to effectively understand their rights and options in an informative and easy to understand manner.  The proposed Notice Plan provides a reach similar to those that courts have approved previously and within the range recommended and considered reasonable by The Federal Judicial Center's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*. The proposed Notice Plan also conforms to the standards employed by A.B. Data in similar notification plans. For all these reasons, in my opinion, the proposed Notice Plan is the best practicable under the circumstances and satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 29th day of July 2025 in Minneapolis, Minnesota.

Justin Parks

DECLARATION OF JUSTIN PARKS OF A.B. DATA IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

# EXHIBIT A



**Headquarters**
600 A.B. Data Drive
Milwaukee, WI 53217
P: 866-217-4470
F: 414-961-3099

**New York**
One Battery Park Plaza
32nd Floor
New York, NY 10004
P: 646-290-9137

**Washington DC**
915 15th St., NW, Ste. 300
Washington, DC 20005
P: 202-618-2900
F: 202-462-2085

**Florida**
5080 PGA Boulevard, Ste. 209
Palm Beach Gardens, FL 33418
P: 561-336-1801
F: 561-252-7720

**Israel**
19 Weissburg Street
Tel Aviv 69358
Israel
P: +972 (3) 720-8782

**London**
71-75 Shelton Street
Covent Garden
London, WC2H 9JQ
P: +44 20 4586 1892



# CAPABILITIES

## About A.B. Data

Founded in 1981, **A.B. Data has earned a reputation** for expertly managing the complexities of class action administration in consumer, antitrust, securities, Securities and Exchange Commission (SEC) enforcement actions, and ERISA, Attorneys General, employment, civil rights, insurance, environmental, wage and hour, and other class action cases. **A.B. Data's work in all aspects of class action administration** has been perfected by decades of experience in hundreds of class action cases involving billions of dollars in total settlements. Dedicated professionals deliver **A.B. Data's all-inclusive services,** working in partnership with its clients to administer their class action cases effectively, efficiently, and affordably, regardless of size or scope.

**A.B. Data offers unmatched resources and capacity** and is capable of expertly administering any class action notice, settlement, and/or fund administration. Whether notifying millions of class members in the United States or throughout the world, processing millions of claims, distributing payments digitally via A.B. Data's Digital PayPortal℠, or printing and distributing millions of checks, **A.B. Data matches its talent and technology** to the specific needs of its clients, delivering unparalleled service on time and on budget without ever compromising quality.

## Location, Ownership Structure

**A.B. Data is an independently owned**, more than 40-year-old, Milwaukee, Wisconsin-based company that prides itself on its vast expertise and industry-leading innovations. We like to remind our clients and partners that we're not just a class action administration company, but a group of experienced, dedicated professionals who believe that relationships are just as important as the accurate and timely management of class action administrations. In other words, we are people who do business with people.

## Services

**Every A.B. Data client is deserving of the best job we can put forward**. A.B. Data makes class action administration easy for our clients with clarity, convenience, and efficiency. Our priority is to navigate the intricacies of our clients' matters and deliver successful results by using our solid expertise, advanced technology, and top-quality products and services. We pay attention to the details and get it right the first time.

We aim to provide our clients the full experience of a truly collaborative working relationship. It is why we believe much of our success originates from our philosophy of "people doing business with people."



# Services

## All Digital — From Notice to Distribution

**A.B. Data is uniquely positioned to design, implement, and maintain notice and settlement administration programs** using an innovative, "all-digital" approach that replaces the more traditional and less efficient methods of administration, such as newspaper ads, mailed notices, and paper checks. Many of our recent proposed notice plans and claim programs utilize the latest technologies such as microtargeted digital ads for notice, streamlined online claims, and distributing settlement funds electronically using a digital paywall. These methods provide significant cost savings, are consistent with the amendments to Rule 23 that are now in effect, and importantly provide much-needed alignment of class action notice and administration with current consumer behaviors.

## Pre-Settlement Consultation

**The pre-settlement consultation is a collaborative session** designed to help A.B. Data clients prepare a stronger case. Our support teams simplify the task of sorting through a maze of documents during investigation and discovery, streamlining the process and preserving fund assets. From there, we assist with fully interactive media packages for court presentations and settlement negotiations. A.B. Data works closely with our clients, offering expert testimony on documents, processing, class and notice manageability, and proposed plans of allocation.

## Media Services

**A.B. Data continues to earn our reputation** as the early innovator in integrating advanced micro-targeting techniques, including contextual targeting, behavioral targeting, and predictive modeling. Coupled with inventive digital media strategies to drive claims, case-specific banner ad development, class member research, and comScore analysis services, our multi-tiered media programs are designed to cost-effectively deliver notice to potential class members and increase claims rates.

## Notice Administration

**In A.B. Data, clients have a comprehensive resource** with a depth of experience in direct notice. Our compliance and understanding of Rule 23 of the Federal Rules of Civil Procedure are crucial in meeting the "plain language" legal requirements for any campaign. From our sophisticated digital media capabilities and extensive global experience with class member research, our experts create notice documents that are easily understandable and cost-efficient to produce. We consult with our clients to deliver notice documents from multi-page, mailed, or emailed notice packets to concise postcards that establish the most influential and cost-effective means of communicating with potential claimants.



## Claims Processing

**A.B. Data continues to bring game-changing technologies** to improve the speed and precision in claims processing. Our robust system for online claims submissions allows us to meticulously verify data and documentation, preserve and authenticate claims, and calculate and verify settlement amounts. In addition, our data network infrastructure includes on-site data storage, backup, contingency plans, and security for electronic and hard copy claim filings. It is all part of a total commitment to be the most innovative and comprehensive resource in the industry. At A.B. Data, we take pride in having the in-house capacity to process millions of pages, as well as the organizational integrity to treat every claim as if it were the only one.

## Contact Center

**A.B. Data's Contact Center is comprised of a full staff** that is trained on and equipped with online and telecommunication systems to monitor and connect with class members. Associates routinely monitor class member communication for all class action administrations, including antitrust, consumer, and securities.

Utilizing monitoring software, associates watch multiple social media channels simultaneously, allowing for instantaneous routing of inquiries and interaction with claimants. Detailed and concise analytical reports outlining Contact Center activities are always provided.

Our Contact Center and case websites are capable of handling millions of class member engagements, as recently displayed in a campaign which garnered over 1.2 million website visits in two months and had more than 72,500 Facebook engagements. Facebook comments and threads are monitored and claimants are guided to the website for more information. Google AdWords and display advertising have also brought hundreds of thousands of visitors to various case websites.

A.B. Data's Contact Center also has Spanish language associates in-house and we can accommodate any language, given proper lead time. Traditional call center facilities are also available, if needed.

## Case Websites

**We offer a state-of-the-art technology platform** that supports every step of our class action administration process. Our expert marketing professionals design customized case-specific websites that provide potential class members easy access to case information, critical documents, important deadlines, as well as the capability to file claim forms and register for future mailings about the case. Claimants can use the website to elect to receive their settlement payments by mail or by one of several digital payment options, all accessible by mobile devices.

## Settlement Fund Distribution

**From complete escrow services to establishment of qualified settlement funds**, check printing and mailing, electronic cash or stock distribution and tax services, A.B. Data has always provided a full-service solution to Settlement Fund Distribution. Our IT team has decades of experience in developing and implementing fast, secure databases and claims administration systems that ensure class members receive the correct amount in their settlement disbursement. Today's digital capabilities allow even greater convenience for class members. In certain instances, claimants can now elect to

instantaneously receive settlement payments through popular digital-payment options, such as PayPal, Amazon, and virtual debit cards.

## A.B. Data's Leadership

 **A.B. Data's administration team** is composed of the following key executives, who collectively have decades of experience settling and administering class actions:

**Bruce A. Arbit, Co-Managing Director** and one of the founders of the A.B. Data Group, serves as Chairman of the Board and oversees the day-to-day operations of the A.B. Data Group of companies, employing almost 400 people in the United States and Israel. Mr. Arbit is also Chairman of the Board of Integrated Mail Industries, Ltd. and has served as a member of the Board of Directors of University National Bank and State Financial Bank. He is the past Chairman of Asset Development Group, Inc., Home Source One, and American Deposit Management and is a member of the National Direct Marketing Association, the Direct Marketing Fundraising Association, and the American Association of Political Consultants. He was named 1996 Direct Marketer of the Year by the Wisconsin Direct Marketing Association.

A.B. Data's work in class action litigation support began with the Court selecting A.B. Data to oversee the restitution effort in the now-famous Swiss Banks Class Action Case, the International Commission on Holocaust Era Insurance Claims, and every other Holocaust Era Asset Restitution program, in which it was the company's job to identify, contact, and inform survivors of the Holocaust. A.B. Data delivered by reaching out to millions of people in 109 countries who spoke more than 30 languages. Since those days, Mr. Arbit has guided the class action division through phenomenal growth and success. Today, A.B. Data manages hundreds of administrations annually that distributes billions of dollars to class members.

**Thomas R. Glenn, President**, Mr. Glenn's management of A.B. Data's Class Action Administration Company includes designing and implementing notice plans and settlement administration programs for antitrust, securities, and Securities and Exchange Commission settlements and SEC disgorgement fund distributions, as well as consumer, employment, insurance, and civil rights class actions. Mr. Glenn previously served as Executive Vice President at Rust Consulting and has more than 30 years of executive leadership experience.

**Eric Miller, Senior Vice President**, as a key member of A.B. Data's Class Action Administration Leadership Team, oversees the Case Management Department and supervises the operations and procedures of all of A.B. Data's class action administration cases. Mr. Miller is recognized in the class action administration industry as an expert on securities, SEC, consumer, product recall, product liability, general antitrust, pharmaceutical antitrust, and futures contract settlements, to name a few settlement types. Prior to joining A.B. Data, Mr. Miller served as the Client Service Director for Rust Consulting, responsible there for its securities practice area. He has more than 20 years of operations, project management, quality assurance, and training experience in the class action administration industry. In addition, Mr. Miller manages A.B. Data's office in Palm Beach Gardens, Florida.

**Elaine Pang, Vice President, Media**, oversees the Media Department and is responsible for the direction, development, and implementation of media notice plans for A.B. Data's clients. Ms. Pang brings more than 15 years of experience in developing and implementing multifaceted digital and traditional media for high profile complex legal notice programs. She uses her experience in class actions and advertising to provide the best practicable notice plans for large scale campaigns across domestic and international regions, and she leverages her expertise to better understand the evolving media landscape and utilize cutting-edge technology and measurement tools. Prior to entering the class action industry, Ms. Pang worked with many leading reputable brands, including General Mills, Air Wick, Jet-Dry, Comedy Central, Madison Square Garden, Radio City Music Hall, and Geox. She earned her MBA from Strayer University and holds a BS in Marketing from Pennsylvania State University.  Ms. Pang's credentials include Hootsuite Social Marketing Certification, Google Adwords and Analytics Certification, and IAB Digital Media Buying and Planning Certification.

**Paul Sauberer, Vice President of Quality**, is responsible for overseeing quality assurance and process management, working diligently to mitigate risk, ensure exceptional quality control, and develop seamless calculation programming. Mr. Sauberer brings more than 20 years of experience as a quality assurance specialist with a leading claims-processing company where he developed extensive knowledge in securities class action administration. He is recognized as the class action administration industry's leading expert on claims and settlement administrations of futures contracts class actions.

**Justin Parks, Vice President**, is a member of A.B. Data's Class Action Administration Leadership Team. Mr. Parks brings extensive experience in client relations to A.B. Data's business development team. Mr. Parks has over 15 years of experience in the legal settlement administration services industry and has successfully managed and consulted on notice plans and other administrative aspects in hundreds of cases. Mr. Parks is uniquely experienced in Data Privacy matters, having consulted with clients on numerous matters stemming from data breaches as well as violations of the Illinois Biometric Information Privacy Act (BIPA), including some of the first ever Biometric Privacy related settlements in history. Mr. Parks' knowledge and understanding of the class action industry, as well as his client relationship skills, expand A.B. Data's capacity to achieve its business development and marketing goals effectively.

**Steve Straub, Vice President, Operations**, started with A.B. Data in 2012 as a Claims Administrator. He moved through the ranks within the company where he spent the past five years as Senior Project Manager managing many of the complex commodities cases such as *In re LIBOR-Based Financial Instruments Antitrust Litigation*, *In re London Silver Fixing, Ltd. Antitrust Litigation*, and *Laydon v. Mizuho Bank, Ltd., et al*. Mr. Straub's performance in these roles over the past ten years, along with his comprehensive knowledge of company and industry practices and first-person experience leading the project management team, has proven him an invaluable member of the A.B. Data team.

In his role as Vice President of Operations, his responsibilities include developing efficiencies within the operations center, which includes mailroom, call center, and claims processing areas. His areas of expertise include business process development, strategic/tactical operations planning and implementation, risk analysis, budgeting, business expansion, growth planning and implementation, cost reduction, and profit, change, and project management. Mr. Straub is well-versed in the administration of securities, consumer, and antitrust class action settlements. He earned his Juris Doctor degree from Seton Hall University School of Law in Newark, New Jersey.

**Jack Ewashko, Director of Client Services**, brings twenty years of industry and brokerage experience to his role with A.B. Data. He is an accomplished client manager adept at facilitating proactive communications between internal and outside parties to ensure accurate and timely deliverables. Mr. Ewashko previously held positions at two claim administration firms where he

oversaw the securities administration teams and actively managed numerous high-profile matters, including the $2.3 billion foreign exchange litigation. He notably served as Vice President, FX and Futures Operations at Millennium Management, a prominent global alternative investment management firm. As he progressed through trading, analytic, management, and consultancy roles at major banks and brokerage firms, Mr. Ewashko gained hands-on experience with vanilla and exotic securities products, including FX, commodities, mutual funds, derivatives, OTC, futures, options, credit, debt, and equities products. In the financial sector, he also worked closely with compliance and legal teams to ensure accuracy and conformity with all relevant rules and regulations regarding the marketing and sale of products, as well as the execution and processing of trades. He has held Series 4, Series 6, Series 7, and Series 63 licenses, and has been a member of the Futures Industry Association (FIA) and Financial Industry Regulatory Authority (FINRA). Mr. Ewashko earned his Bachelor of Business Administration from Long Island University, Brooklyn, New York.

**Brian Devery, Director of Client Services**, brings more than a decade of experience in class action administration and project management, as well as over two decades of experience as an attorney (ret.). Mr. Devery currently focuses on consumer, antitrust, employment, and other non-securities based administrations. In addition to driving project administration, he is focused on the implementation of process improvement, streamlining, and automation. Mr. Devery is admitted to practice law in State and Federal Courts of New York with his Juris Doctorate earned from the Maurice A. Deane School of Law at Hofstra University, Hempstead, New York.

**Adam Walter, PMP, Director of Client Services**, has nearly fifteen years of experience managing the administration of securities class action settlements and SEC disgorgements totaling more than $4 billion. He has managed settlement programs in engagements involving some of the largest securities class action settlements and is a key contributor to the development of administration strategies that meet the evolving needs of our clients. His responsibilities include developing case administration strategies to ensure that all client and court requirements and objectives are met, overseeing daily operations of case administrations, ensuring execution of client deliverables, providing case-related legal and administration support to class counsel, overseeing notice dissemination programs, implementing complex claims-processing and allocation methodologies, establishing quality assurance and quality control procedures, and managing distribution of settlement funds. Mr. Walter holds a bachelor's degree in business administration from Florida Atlantic University, Boca Raton, Florida. He also has been an active member of the Project Management Institute since 2010 and is PMP®-certified.

**Eric Nordskog, Director of Client Services**, started with A.B. Data in 2012 on the operations team, managing dozens of team leads and claims administrators in the administration of legal cases and actions. In 2017, Mr. Nordskog was promoted to Project Manager, due in part to his proven ability to add consistency and efficiency to the e-claim filing process with new streamlined processes and audit practices. Today, as Senior Project Manager, he directs many of A.B. Data's securities, insurance, and consumer cases. He regularly oversees the administration of large insurance cases, such as two recent Cigna Insurance matters that involved complex calculations and over one million class members each. He is also the primary hiring and training manager for new project managers and coordinators. Mr. Nordskog earned his Juris Doctor degree from Marquette University Law School, Milwaukee, in 2001.

**Eric Schultz, MCSE, Information Technology Manager and Security Team Chairperson**, has been with A.B. Data for more than 19 years, and is currently responsible for overseeing all information technology areas for all A.B. Data divisions across the United States and abroad, including network infrastructure and architecture, IT operations, data security, disaster recovery, and all physical, logical, data, and information systems security reviews and audits required by our clients or otherwise. As a Microsoft Certified Systems Engineer (MCSE) with more than 25 years of experience in information

technology systems and solutions, Mr. Schultz has developed specializations in network security, infrastructure, design/architecture, telephony, and high-availability network systems.

## Secure Environment

 **A.B. Data's facilities provide the highest level of security** and customization of security procedures, including:

- A Secure Sockets Layer server
- Video monitoring
- Limited physical access to production facilities
- Lockdown mode when checks are printed
- Background checks of key employees completed prior to hire
- Frequency of police patrol – every two hours, with response time of five or fewer minutes
- Disaster recovery plan available upon request

## Data Security

**A.B. Data is committed to protecting the confidentiality, integrity, and availability of personal identifying information** and other information it collects from our clients, investors, and class members and requires that its employees, subcontractors, consultants, service providers, and other persons and entities it retains to assist in distributions do the same. A.B. Data has developed an Information Security Policy, a suite of policies and procedures intended to cover all information security issues and bases for A.B. Data, and all of its divisions, departments, employees, vendors, and clients. A.B. Data has also recently taken the necessary, affirmative steps toward compliance with the EU's General Data Protection Regulation and the California Consumer Privacy Act.

A.B. Data has a number of high-profile clients, including the Securities and Exchange Commission (SEC), the United States Department of Justice, the Attorneys General of nearly all 50 states, other agencies of the United States government, and the Government of Israel, as well as direct banking and payment services companies with some of the most recognized brands in United States financial services and some of the largest credit card issuers in the world.

We are therefore frequently subjected to physical, logical, data, and information systems security reviews and audits. We have been compliant with our clients' security standards and have also been determined to be compliant with ISO/IEC 27001/2 and Payment Card Industry (PCI) data-security standards, the Gramm-Leach-Bliley Act (GLB) of 1999, the National Association of Insurance Commissioners (NAIC) Regulations, the Health Insurance Portability and Accountability Act (HIPAA) of 1996, and the Health Information Technology for Economic and Clinical Health Act (HITECH).

The Government of Israel has determined that A.B. Data is compliant with its rigorous security standards in connection with its work on Project HEART (Holocaust Era Asset Restitution Taskforce).

A.B. Data's fund distribution team has been audited by EisnerAmper LLP and was found compliant with class action industry standards and within 99% accuracy. EisnerAmper LLP is a full-service advisory and accounting firm and is ranked the 15th-largest accounting firm in the United States.

In addition, as part of PCI compliance requirements, A.B. Data has multiple network scans and audits from third-party companies, such as SecurityMetrics and 403 Labs, and is determined to be compliant with each of them.

## Fraud Prevention and Detection

**A.B. Data is at the forefront of class action fraud prevention.**

A.B. Data maintains and utilizes comprehensive proprietary databases and procedures to detect fraud and prevent payment of allegedly fraudulent claims.

We review and analyze various filing patterns across all existing cases and claims. Potential fraudulent filers are reported to our clients as well as to the appropriate governmental agencies where applicable.

## Representative Class Action Engagements



**A.B. Data and/or its team members have successfully administered** hundreds of class actions, including many major cases. Listed below are just some of the most representative or recent engagements.

<span style="background-color:#c0392b; color:white">**Consumer & Antitrust Cases**</span>

- *In re EpiPen Marketing, Sales Practices and Antitrust Litigation*
- *In re Broiler Chicken Antitrust Litigation - Commercial (Indirect)*
- *In re Broiler Chicken Antitrust Litigation – Indirect*
- *In re Broiler Chicken Antitrust Litigation – Direct*
- *In re Pork Antitrust Litigation – Directs*
- *In re Pork Antitrust Litigation – Indirects*
- *Peter Staley, et al. v. Gilead Sciences, Inc., et al.*
- *In re: Opana ER Antitrust Litigation*
- *In re Ranbaxy Generic Drug Application Antitrust Litigation*
- *In re Valeant Pharmaceuticals Int'l, Inc. Third-Party Payor Litigation*
- *Staley, et al., v. Gilead Sciences*
- *In Re: Generic Pharmaceuticals Pricing Antitrust Litigation – Direct Purchasers*
- *Beef Direct Purchaser Antitrust Litigation*
- *BCBSM, Inc. v. Vyera Pharmaceuticals, et al.* (Daraprim)
- *In re Automobile Antitrust Cases I and II*
- *Olean Wholesale Grocery Cooperative, Inc., et al. v. Agri Stats, Inc., et al.* (Turkey)



- *Integrated Orthopedics, Inc., et al. v. UnitedHealth Group, et al.*
- *In Re: Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litigation*
- *Vista Healthplan, Inc., et al. v. Cephalon, Inc., et al.* (Provigil)
- *Jeffrey Koenig, et al. v. Vizio, Inc.*
- *Wit, et al. v. United Behavioral Health*
- *Weiss, et al. v. SunPower Corporation*
- *Smith, et al. v. FirstEnergy Corp., et al.*
- *Resendez, et al. v. Precision Castparts Corp. and PCC Structurals, Inc.*
- *Julian, et al. v. TTE Technology, Inc., dba TCL North America*
- *Eugenio and Rosa Contreras v. Nationstar Mortgage LLC*
- *Phil Shin, et al. v. Plantronics, Inc.*
- *In re: Qualcomm Antitrust Litigation*
- *In re Resistors Antitrust Litigation*
- *The Hospital Authority of Metropolitan Government of Nashville and Davidson County, Tennessee v. Momenta Pharmaceuticals, Inc. and Sandoz Inc.* ("Lovenox Antitrust Matter")
- *William Kivett, et al. v. Flagstar Bank, FSB, and DOES 1-100, inclusive*
- *Adelphia, Inc. v. Heritage-Crystal Clean, Inc.*
- *LLE One, LLC, et al. v. Facebook, Inc.*
- *Bach Enterprises, Inc., et al. v. Advanced Disposal Services South, Inc., et al.*
- *JWG Inc., et al. v. Advanced Disposal Services Jacksonville, L.L.C., et al.*
- *State of Washington v. Motel 6 Operating L.P. and G6 Hospitality LLC*
- *In re GSE Bonds Antitrust Litigation*
- *Wave Lengths Hair Salons of Florida, Inc., et al. v. CBL & Associates Properties, Inc., et al.*
- *In re Loestrin 24 FE Antitrust Litigation*
- *Office of the Attorney General, Department of Legal Affairs, State of Florida v. Pultegroup, Inc. and Pulte Home Company, LLC*
- *In re Cigna-American Specialties Health Administration Fee Litigation*
- *In re: Intuniv Antitrust Litigation*
- *High Street, et al. v. Cigna Corporation, et al.*
- *Gordon Fair, et al. v. The Archdiocese of San Francisco, San Mateo, and Marin County*
- *Bizzarro, et al. v. Ocean County Department of Corrections, et al.*
- *Meeker, et al. v. Bullseye Glass Co.*
- *MSPA Claims 1, LLC v. Ocean Harbor Casualty Insurance Company*
- *Tennille v. Western Union Company - Arizona*
- *Garner, et al. v. Atherotech Holdings, Inc.* and *Garner, et al. v. Behrman Brothers IV, LLC, et al.*
- *Robinson, et al. v. Escallate, LLC*
- *Josefina Valle and Wilfredo Valle, et al. v. Popular Community Bank f/k/a Banco Popular North America*
- *Vision Construction Ent., Inc. v. Waste Pro USA, Inc. and Waste Pro USA, Inc. and Waste Pro of Florida, Inc.*
- *Plumley v. Erickson Retirement Communities, et al.*
- *In re London Silver Fixing, Ltd. Antitrust Litigation*
- *Ploss v. Kraft Foods Group, Inc. and Mondelēz Global LLC*
- *In re Mexican Government Bonds Antitrust Litigation*
- *In re: Ready-Mixed Concrete Antitrust Litigation*
- *In re: Marine Hose Antitrust Litigation*
- *Iowa Ready Mixed Concrete Antitrust Litigation*
- *In re Potash Antitrust Litigation (II)*
- *In re Evanston Northwestern Healthcare Corp. Antitrust Litigation*
- *In re Polyurethane Foam Antitrust Litigation*



- *In re LIBOR-Based Financial Instruments Antitrust Litigation*
- *In re Lorazepam and Clorazepate Antitrust Litigation*
- *In re Cardizem CD Antitrust Litigation*
- *Vista Healthplan, Inc., and Ramona Sakiestewa v. Bristol-Myers Squibb Co., and American BioScience, Inc.*
- *In re Lupron Marketing and Sales Practices Litigation*
- *In re Terazosin Hydrochloride Antitrust Litigation*
- *In re Warfarin Sodium Antitrust Litigation*
- *Rosemarie Ryan House, et al. v. GlaxoSmithKline PLC and SmithKline Beecham Corporation*
- *Carpenters and Joiners Welfare Fund, et al. v. SmithKline Beecham*
- *New Mexico United Food and Commercial Workers Union's and Employers' Health and Welfare Trust Fund, et al. v. Purdue Pharma L.P.*
- *In Re Pharmaceutical Industry Average Wholesale Price Litigation*
- *Alma Simonet, et al. v. SmithKline Beecham Corporation, d/b/a GlaxoSmithKline*
- *In re Relafen Antitrust Litigation*
- *In Re Remeron Direct Purchaser Antitrust Litigation*
- *In re TriCor Indirect Purchasers Antitrust Litigation*
- *Nichols, et al., v. SmithKline Beecham Corporation*
- *In re: DDAVP Indirect Purchaser Antitrust Litigation*

## Securities Cases

- *Plymouth County Retirement Association v. Spectrum Brands Holdings, Inc., et al.*
- *Tung, et al. v. Dycom Industries, Inc., et al.*
- *Boutchard, et al. v. Gandhi, et al.* ("Tower/e-Minis")
- *MAZ Partners LP v. First Choice Healthcare Solutions, Inc.*
- *SEB Investment Management AB, et al. v. Symantec Corporation, et al.*
- *In re Impinj, Inc. Securities Litigation*
- *In re Netshoes Securities Litigation*
- *Yellowdog Partners, LP, et al. v. Curo Group Holdings Corp., et al.*
- *In re Brightview Holdings, Inc. Securities Litigation*
- *In re Obalon Therapeutics, Inc. Securities Litigation*
- *In re Willis Towers Watson PLC Proxy Litigation*
- *In re Blue Apron Holdings, Inc. Securities Litigation*
- *In re: Qudian Inc. Securities Litigation*
- *Plymouth County Contributory Retirement System v. Adamas Pharmaceuticals, et al.*
- *In re Perrigo Company PLC Securities Litigation*
- *Enriquez, et al. v. Nabriva Therapeutics PLC, et al.*
- *Teamsters Local 456 Pension Fund, et al. v. Universal Health Services, Inc., et al.*
- *Olenik, et al. v. Earthstone Energy, Inc.*
- *Shenk v. Mallinckrodt plc, et al.*
- *In re The Allstate Corp. Securities Litigation*
- *Christopher Vataj v. William D. Johnson, et al.* (PG&E Securities II)
- *Kirkland v. WideOpenWest, Inc.*
- *Oklahoma Police Pension and Retirement System v. Sterling Bancorp, Inc.*
- *In re Uxin Limited Securities Litigation*
- *City of Hallandale Beach Police Officers' & Firefighters' Personnel Retirement Trust v. Ergen, et al.* (Echostar)
- *Lewis v. YRC Worldwide Inc., et al.*
- *Tomaszewski v. Trevena, Inc., et al.*



- *In re Restoration Robotics, Inc. Securities Litigation*
- *Public Employees' Retirement Systems of Mississippi, et al. v. Treehouse Foods, Inc., et al.*
- *Ronald L. Jackson v. Microchip Technology, Inc., et al.*
- *In re Micro Focus International plc Securities Litigation*
- *In re Dynagas LNG Partners LP Securities Litigation*
- *Weiss, et al. v. Burke, et al.* (Nutraceutical)
- *Yaron v. Intersect ENT, Inc., et al.*
- *Utah Retirement Systems v. Healthcare Services Group, Inc., et al.*
- *In re PPDAI Group Inc. Securities Litigation*
- *In re: Evoqua Water Technologies Corp. Securities Litigation*
- *In re Aqua Metals, Inc. Securities Litigation*
- *St. Lucie County Fire District Firefighters' Pension Trust Fund v. Southwestern Energy Company*
- *In re CPI Card Group Inc. Securities Litigation*
- *Arkansas Teacher Retirement System, et al. v. Alon USA Energy, Inc., et al.*
- *In re TAL Education Group Securities Litigation*
- *GCI Liberty Stockholder Litigation*
- *In re SciPlay Corporation Securities Litigation*
- *In re Allergan Generic Drug Pricing Securities Litigation*
- *In re Vivint Solar, Inc. Securities Litigation*
- *In re YayYo Securities Litigation*
- *In re JPMorgan Treasury Futures Spoofing Litigation*
- *Searles, et al. v. Crestview Partners, LP, et al.* (Capital Bank)
- *In re Lyft, Inc. Securities Litigation*
- *In re Aegean Marine Petroleum Network, Inc. Securities Litigation*
- *In re JPMorgan Precious Metals Spoofing Litigation*
- *In re Pivotal Software, Inc. Securities Litigation*
- *Longo, et al. v. OSI Systems, Inc., et al.*
- *In re Homefed Corporation Stockholder Litigation*
- *Pierrelouis v. Gogo Inc., et al.*
- *Pope v. Navient Corporation, et al.*
- *In re Merit Medical Systems, Inc. Securities Litigation*
- *In re Frontier Communications Corporation Stockholder Litigation*
- *Holwill v. AbbVie Inc.*
- *Budicak, Inc., et al. v. Lansing Trade Group, LLC, et al.* (SRW Wheat Futures)
- *Yannes, et al. v. SCWorx Corporation*
- *In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations*
- *In re Myriad Genetics, Inc. Securities Litigation*
- *In re Chicago Bridge & Iron Co. N.V. Securities Litigation*
- *The Arbitrage Fund, et al. v. William Petty, et al.* (Exactech)
- *In re Columbia Pipeline Group, Inc. Merger Litigation*
- *Martinek v. AmTrust Financial Services, Inc.*
- *City of Pittsburgh Comprehensive Municipal Pension Trust Fund, et al. v. Benefitfocus, Inc., et al.*
- *In re: Evoqua Water Technologies Corp. Securities Litigation*
- *Laydon v. Mizuho Bank, Ltd., et al.*
- *Lomingkit, et al. v. Apollo Education Group, Inc., et al.*
- *In re Caraco Pharmaceutical Laboratories, Ltd. Shareholder Litigation*
- *Norfolk County Retirement System, et al. v. Community Health Systems, Inc., et al.*
- *Chester County Employees' Retirement Fund v. KCG Holdings, Inc., et al.*
- *Oklahoma Law Enforcement Retirement System, et al. v. Adeptus Health Inc., et al.*
- *Di Donato v. Insys Therapeutics, Inc., et al.*



- *Lundgren-Wiedinmyer, et al. v. LJM Partners, Ltd, et al.*
- *Martin, et al. v. Altisource Residential Corporation, et al.*
- *Stephen Appel, et al. v. Apollo Management, et al.*
- *In re Medley Capital Corporation Stockholder Litigation*
- *Forman, et al. v. Meridian BioScience, Inc., et al.*
- *Public Employees' Retirement System of Mississippi, et al. v. Endo International PLC, et al.*
- *In Re Flowers Foods, Inc. Securities Litigation*
- *Jiangchen, et al. v. Rentech, Inc., et al.*
- *In re Liberty Tax, Inc. Stockholder Litigation*
- *In re RH, Inc. Securities Litigation*
- *Lazan v. Quantum Corporation, et al.*
- *Nabhan v. Quantum Corporation, et al.*
- *Edmund Murphy III, et al. v. JBS S.A.*
- *Public Employees' Retirement System of Mississippi, et al. v. Sprouts Farmers Market, Inc., et al.*
- *In re Starz Stockholder Litigation*
- *Judith Godinez, et al. v. Alere Inc., et al.*
- *Rahman and Giovagnoli, et al. v. GlobalSCAPE, Inc., et al.*
- *Arthur Kaye, et al. v. ImmunoCellular Therapeutics, Ltd., et al.*
- *In re CPI Card Group Inc. Securities Litigation*
- *Daniel Aude, et al. v. Kobe Steel, Ltd., et al.*
- *In re Quality Systems, Inc. Securities Litigation*
- *Cooper, et al. v. Thoratec Corporation, et al.*
- *Washtenaw County Employees' Retirement System, et al. v. Walgreen Co., et al.*
- *Elkin v. Walter Investment Management Corp., et al.*
- *In Re CytRx Corporation Securities Litigation*
- *Ranjit Singh, et al. v. 21Vianet Group, Inc., et al.*
- *In re PTC Therapeutics, Inc. Securities Litigation*
- *Securities and Exchange Commission v. Mark A. Jones*
- *In re Sequans Communications S.A. Securities Litigation*
- *In re Henry Schein, Inc. Securities Litigation*
- *Ronge, et al. v. Camping World Holdings, Inc., et al.*
- *Oklahoma Firefighters Pension & Retirement System v. Lexmark International, Inc.*
- *Christakis Vrakas, et al. v. United States Steel Corporation, et al.*
- *Emerson et al. v. Mutual Fund Series Trust, et al. ("Catalyst")*
- *In re Fannie Mae 2008 Securities Litigation*
- *In re Anadarko Petroleum Corporation Class Action Litigation*
- *Ge Dandong, et al., v. Pinnacle Performance Limited, et al.*
- *In Re: Rough Rice Commodity Litigation*
- *Xuechen Yang v. Focus Media Holding Limited et al.*
- *In re Massey Energy Co. Securities Litigation*
- *In re Swisher Hygiene, Inc.*
- *The City of Providence vs. Aeropostale, Inc., et al.*
- *In re Metrologic Instruments, Inc. Shareholders Litigation*
- *Public Pension Fund Group v. KV Pharmaceutical Company et al.*
- *Pension Trust Fund for Operating Engineers, et al. v. Assisted Living Concepts, Inc., et al.*
- *In re Lehman Brothers Equity/Debt Securities Litigation*
- *In re: Platinum and Palladium Commodities Litigation* (Platinum/Palladium Physical Action)
- *In re: Platinum and Palladium Commodities Litigation* (Platinum/Palladium Futures Action)
- *In re General Electric Co. Securities Litigation*
- *In re CNX Gas Corporation Shareholders Litigation*

- *Oscar S. Wyatt, Jr. et al. v. El Paso Corporation, et al.*
- *In re Par Pharmaceutical Securities Litigation*
- *In re Par Pharmaceutical Companies, Inc. Shareholders Litigation*
- *In re Delphi Financial Group Shareholders Litigation*
- *In re SLM Corporation Securities Litigation*
- *In re Del Monte Foods Company Shareholder Litigation*
- *Leslie Niederklein v. PCS Edventures!.com, Inc. and Anthony A. Maher*
- *In re Beckman Coulter, Inc. Securities Litigation*
- *Michael Rubin v. MF Global, Ltd., et al.*
- *Allen Zametkin v. Fidelity Management & Research Company, et al.*
- *In re BP Prudhoe Bay Royalty Trust Securities Litigation*
- *Police and Fire Retirement System of the City of Detroit et al. v. SafeNet, Inc., et al.*
- *In re Limelight Networks, Inc. Securities Litigation*
- *In re Gilead Sciences Securities Litigation*
- *In re ACS Shareholder Litigation, Consolidated C.A. No. 4940-VCP*
- *Lance Provo v. China Organic Agriculture, Inc., et al.*
- *In re LDK Solar Securities Litigation*

## Labor & Employment Cases

- *Verizon OFCCP Settlement*
- *Alvarez, et al. v. GEO Secure Services, LLC*
- *Sartena v. Meltwater FLSA*
- *Carmen Alvarez, et al. v. Chipotle Mexican Grill, Inc., et al.*
- *Turner, et al. v. Chipotle Mexican Grill, Inc.*
- *Long, et al. v. Southeastern Pennsylvania Transportation Authority*
- *Matheson, et al. v. TD Bank, N.A.*
- *Ludwig, et al. v. General Dynamics Information Technology, Inc., et al.*
- *Bedel, et al. v. Liberty Mutual Group Inc.*
- *Irene Parry, et al. v. Farmers Insurance Exchange, et al.*
- *Maldonado v. The GEO Group, Inc.*
- *Alderman and Maxey v. ADT, LLC*
- *Albaceet v. Dick's Sporting Goods*
- *Rodriguez v. The Procter & Gamble Company*
- *Adekunle, et al. v. Big Bang Enterprises, Inc. d/b/a The Revenue Optimization Companies*
- *Gorski, et al. v. Wireless Vision, LLC*
- *Lopez, et al. v. New York Community Bank, et al.*
- *Hamilton, et al. v. The Vail Corporation, et al.*
- *Eisenman v. The Ayco Company L.P.*
- *Matheson v. TD Bank, N.A.*
- *Simon v. R.W. Express LLC, d/b/a Go Airlink NYC*
- *Perez v. Mexican Hospitality Operator LLC, d/b/a Cosme*
- *Shanahan v. KeyBank, N.A.*
- *Loftin v. SunTrust Bank*
- *Alvarez v. GEO Secure Services, LLC*
- *Weisgarber v. North American Dental Group, LLC*
- *Talisa Borders, et al. v. Wal-mart Stores, Inc.*
- *Reale v. McClain Sonics Inc., et al.*
- *Larita Finisterre and Songhai Woodard, et al. v. Global Contact Services, LLC*
- *Adebisi Bello v. The Parc at Joliet*

- *Garcia, et al. v. Vertical Screen, Inc.*
- *Brook Lemma and Matthieu Hubert, et al. v. 103W77 Partners LLC, et al. ("Dovetail Settlement")*
- *American Federation of Government Employees, Local 1145 v. Federal Bureau of Prisons, U.S. Penitentiary, Atlanta, Georgia*
- *Lisa Ferguson, Octavia Brown, et al. v. Matthew G. Whitaker, Acting AG, DOJ Bureau of Prisons ("USP Victorville")*
- *American Federation of Government Employees, Local 2001 v. Federal Bureau of Prisons, Federal Correctional Institution, Fort Dix, New Jersey*
- *American Federation of Government Employees, Local 506 v. U.S. Department of Justice, Federal Bureau of Prisons, U.S. Penitentiary Coleman II, Coleman, Florida*
- *Vargas v. Sterling Engineering*
- *Rosenbohm v. Verizon*
- *Alex Morgan, et al. v. United States Soccer Federation, Inc.*
- *Iskander Rasulev v. Good Care Agency, Inc.*
- *Kyndl Buzas, et al., v. Phillips 66 Company and DOES 1 through 10*
- *American Federation of Government Employees, Local 408 v. U.S. Dept. of Justice, Federal Bureau of Prisons, Federal Correctional Complex, Butner, NC*
- *In re 2014 Avon Products, Inc. ERISA Litigation*
- *In re Eastman Kodak ERISA Litigation*
- *Taronica White, et al. v. Attorney General Loretta Lynch, Department of Justice*
- *Lisa Ferguson, et al. v. Acting Attorney General Matthew Whitaker, Department of Justice*
- *Melissa Compere v. Nusret Miami, LLC, et al.*
- *Abelar v. American Residential Services, L.L.C., Central District of California*
- *Flores, et al. v. Eagle Diner Corp., et al., Eastern District of Pennsylvania*
- *Michael Furman v. Godiva Chocolatier, Inc., 15th Judicial Circuit, Palm Beach County, Florida*
- *Finisterre et. al v. Global Contact Services, LLC, New York State Supreme Court, Kings County*
- *McGuire v. Intelident Solutions, LLC, et al., Middle District of Florida, Tampa Division*
- *Duran De Rodriguez, et al. v. Five Star Home Health Care Agency, Inc. et al., Eastern District of New York*

### Data Breach/BIPA Cases

- *Hunter v. J.S.T. Corp. BIPA Settlement*
- *Atkinson, et al. v. Minted, Inc.*
- *Rosenbach, et al. v. Six Flags Entertainment Corporation and Great America LLC*
- *Pratz, et al. v. MOD Super Fast Pizza, LLC*
- *The State of Indiana v. Equifax Data Breach Settlement*
- *In re: Vizio, Inc. Consumer Privacy Litigation*
- *In re: Google, Inc. Street View Electronic Communications Litigation*
- *Devin Briggs and Bobby Watson, et al. v. Rhinoag, Inc. ("Briggs Biometric Settlement")*
- *Trost v. Pretium Packaging L.L.C.*
- *In re: Barr, et al. v. Drizly, LLC f/k/a Drizly, Inc., et al.*

### Telephone Consumer Protection Act (TCPA) Cases

- *Perrong, et al. v. Orbit Energy & Power, LLC*
- *Baldwin, et al. v. Miracle-Ear, Inc.*
- *Floyd and Fabricant, et al. v. First Data Merchant Services LLC, et al.*
- *Hoffman, et al. v. Hearing Help Express, Inc., et al.*
- *Lowe and Kaiser, et al. v. CVS Pharmacy, Inc., et al.*
- *Johansen v. HomeAdvisor, Inc., et al.*



- *Charvat, et al. v. National Holdings Corporation*
- *Hopkins, et al. v. Modernize, Inc.*
- *Diana Mey vs. Frontier Communications Corporation*
- *Matthew Donaca v. Dish Network, L.L.C.*
- *Matthew Benzion and Theodore Glaser v. Vivint, Inc.*
- *John Lofton v. Verizon Wireless (VAW) LLC, et al.*
- *Lori Shamblin v. Obama for America, et al.*
- *Ellman v. Security Networks*

## For More Information

For more detailed information regarding A.B. Data's experience, services, or personnel, please see our website at **www.abdataclassaction.com**.

# EXHIBIT B



**Settlement Administration Data Protection Checklist**

| Category | Control / Question | Response |
|---|---|---|
| Limitation on Use of Data | Affirmation that data provided to the administrator for purposes of notice, settlement, or award administration will be used solely for settlement implementation and for no other purpose | All data provided directly to A.B. Data will be used solely for the purpose of effecting the terms of the Settlement. A.B. Data will not use such information or information to be provided by Settlement Class Members for any other purpose than the administration of the Settlement in this Action; specifically the information provided will not be used, disseminated, or disclosed by or to any other person/entity for any other purpose. |
| Technical Controls | Firewalls and intrusion detection/prevention systems | A.B. Data uses modern next generation firewall systems which include intrusion detection, prevention, and alerting functions.  A.B. Data's Information Security Policy requires firewalls be configured for intrusion detection and alerting of incidents to the A.B. Data IT department staff. |
| Technical Controls | Endpoint detection and response (EDR) systems | A.B. Data uses host based endpoint protection systems which are managed by the A.B. Data IT Department.  These protection systems are configured to provide alerting to the IT team for security events who are in turn responsible for responding as required based on incident severity. |
| Technical Controls | Complex password requirements | A.B. Data requires complex passwords as part of its Information Security Policy.  User accounts are required to have a minimum of 12 character passwords with alpha, numeric, and symbols along with upper and lower cases. |
| Technical Controls | Multi-factor authentication for access to systems and data | A.B. Data Class Action Administration Systems require Multi-Factor Authentication for access to all claims systems and data. |
| Technical Controls | Malware protection, anti-virus and vulnerability scanning and penetration tests | A.B. Data uses industry leading endpoint protection systems which include Malware, Anti-Virus and host based intrusion protection technologies.  A.B. Data utilizes regular vulnerability testing scans on a monthly basis to detect vulnerabilities in its systems on both internal and external networks.  These vulnerability scans are performed by a third party and reported back to the A.B. Data IT department for review and remediation as necessary. |
| Technical Controls | Data encryption (including, "encrypted at rest and in transit," "scrambled in storage," and "cell- or column-level encryption for PII" protocols) | A.B. Data's data encryption standards follow its Information Security Policy requirements such that all data is encrypted at rest on all servers, and, while in transit, must meet encryption standards of AES256 bit or greater. |
| Technical Controls | "Key management" for access to encrypted databases (e.g., using a hardware security module (HSM) or a key management service (KMS)) | A.B. Data utilizes a KMS (Key Management System) for encrypted databases. |

| Category | Control / Question | Response |
|---|---|---|
| Technical Controls | Access only provided on need-to-know basis | A. B. Data Group uses the "Least Privilege" security model, whereby all user accounts are granted no security permissions by default and only given the least level of security permissions necessary to properly complete user assigned work duties as defined by the specific department management. |
| Administrative Policies | Personnel and support staff risk assessment and management, including pre-hire background checks and screening processes | All employees must pass a pre-employment background check, including a lawful ten-year criminal record review, employment verification, education verification (if required by position), and credit history.  In addition, substance testing is a hiring requirement. |
| Administrative Policies | Personnel and support staff required to enter into non-disclosure and confidentiality agreements | All employees must sign a Confidentiality Agreement ensuring they will recognize their responsibilities in upholding confidential information accessed using data and resources through A.B. Data's networks, databases, and all technology systems.  All employees must also sign a Non-Compete, Trade Secret, Proprietary and Confidential Information Non-Disclosure Agreement.  This agreement requires the employee to understand, acknowledge, and agree to all the covenants and conditions not to compete and not to disclose proprietary information without consequences for any violation. |
| Administrative Policies | Access controls to systems and data, including guidance for granting, modifying, and reviewing access rights | A.B. Data access, modifications and removal is authorized by human resources and managed by its IT department.  Access permissions are reviewed and approved by management. |
| Administrative Policies | Information security and privacy policy trainings, including policy review, best practices, and data security | A.B. Data requires annual Security Awareness Trainings of all employees and upon hire.  These trainings cover existing and new security policy changes to the organization.  The Information Security Policy is reviewed annually by A.B. Data's Security and Compliance team ensuring it is meeting industry best practices and procedures for the industry.  Additional security trainings are required for roles that require elevated levels of data access. |
| Administrative Policies | No remote access to systems for employees | A.B. Data allows certain employees remote access privileges to its systems as required for performance of their job duties.  All remote access utilizes two-factor authentication. |
| Administrative Policies | Exit interviews/confirmation that terminated/departed employees are immediately cut off from access | A.B. Data's termination procedures require all user account access be removed immediately upon termination.  A.B. Data's IT Department is required upon receipt of termination notification to disable account and system access (physical and logical) within one (1) hour, 24 hours per day, 7 days per week. |
| Administrative Policies | Robust audits of data privacy policies by third-party vendors | A.B. Data currently holds SOC1 SSAE18 annual audit by third part auditors who review its policies annually.  Additionally, A.B. Data is currently in the process of obtaining a SOC2 audit report in 2023. |
| Administrative Policies | Accreditation in accordance with ISO 27001 and SOC2 (among the industry standards listed below) | A.B. Data currently holds SOC1 SSAE18 annual audit by third part auditors who review its policies annually.  Additionally, A.B. Data is currently in the process of obtaining a SOC2 audit report in 2023. |

| Category | Control / Question | Response |
|---|---|---|
| Administrative Policies | Disclosure of external certifications and any notice of expiration | A.B. Data may only disclose certifications and expirations upon written request. |
| Crisis and Risk Management | Incident response / "disaster plan" for immediate response to security incidents such as data breach | A.B. Data has a formal written Incident Response Policy which addresses immediate security incidents. This plan addresses all levels of response and coordination which include management, security response teams, and law enforcement if required. |
| Crisis and Risk Management | Process and timing for notification to attorneys, claimants, and other stakeholders of a data breach and consideration of resources and/or remedies to provide thereto | A.B. Data has a formal written Incident Response Policy which addresses immediate security incidents. This plan addresses all levels of response and coordination which include management, security response teams, external partners, and law enforcement if required. |
| Crisis and Risk Management | Vendor management program that determines and defines requirements to manage risk associated with outsourcing | A.B. Data has a formal vendor management and risk management policy which defines requirements for vendors of A.B. Data. This policy is available for review upon request. |
| Physical Access Controls | Physical Access Security - Security Guards | A.B. Data contracts physical security monitoring to an accredited alarm monitoring company. As part of this contract, A.B. Data has access to security guards on patrol who will respond to issues at our facilities. |
| Physical Access Controls | Physical Access Security - Access cards to facilities with assignment of identification card subject to approval and review | A.B. Data utilizes access control cards (ACS) and identification cards to control physical access to its facilities. Cards are only issued though a management approval process. |
| Physical Access Controls | Physical Access Security - Logs of access | A.B. Data retains logs of all access to/from our facilities. |
| Physical Access Controls | Alarm Systems | AB Data utilizes multiple alarm systems which offer intrusion, fire, and duress alarms. These systems are monitored by certified third party monitoring companies and respond to alarms on a 24 hour basis, 7 days a week, 365 days per year. |
| Physical Access Controls | CCTV recording systems | AB Data manages CCTV and recording systems in house through its IT department management. Video recordings are maintained for 90 days for review retention. All building external entrances and exits are covered by CCTV recordings. In our datacenter, additional coverage is monitoring all exits and entrances along with coverage views of critical equipment and systems. All systems are maintained under a battery and generator power backup to ensure continuous coverage. |
| Data Collection and Retention | Minimization of collection of personally identifiable information, e.g., social security numbers and banking information | A.B. Data only requests information that is needed for purposes of settlement administration and approved by the Court. Typically complete social security numbers and banking information are not required. |
| Data Collection and Retention | Data collection only required to extent necessary for settlement administration | A.B. Data only requests information that is needed for purposes of settlement administration and approved by the Court. Typically complete social security numbers and banking information are not required. |
| Data Collection and Retention | Various methods for ensuring data protection and security - Data classification (including implementation of appropriate safeguards to protect from theft, loss, and/or unauthorized disclosure, use, access, destruction) | A.B. Data's Information Security Policy addresses all data classification and protection policies and procedures. Additionally A.B. Data's staff sign confidentiality and privacy agreements to ensure data is handled appropriately. These policies are available for review upon request. |

| Category | Control / Question | Response |
|---|---|---|
| Data Collection and Retention | Various methods for ensuring data protection and security - Compliance with applicable laws and regulations (see below) | A.B. Data's Information Security Policy addresses all data compliance and regulatory protections. These policies are available for review upon request. |
| Data Collection and Retention | Various methods for ensuring data protection and security - Secure Data Transfer | A.B. Data requires all data transfers to follow industry standard security requirements. A.B. Data's Information Security Policy details these requirements, which include use of encryption during data transfers along with additional security measures. |
| Data Destruction | Preservation of data only for so long as required for administration of the settlement and any relevant reporting required following the payments or distributions | A.B. Data retains settlement administration data based on the requirements set forth in relevant Court Order and/or client agreements. If no guidance is provided, A.B. Data destroys all data when no longer needed for purposes of settlement administration. |
| Data Destruction | Secure data destruction (e.g., 6 months – 1 year or when no longer required) | A.B. Data retains settlement administration data based on the requirements set forth in relevant Court orders and/or client agreements. If no guidance is provided, A.B. Data destroys all data when no longer needed for purposes of settlement administration. |
| Data Destruction | Physical media (e.g., paper, CDs) shredded or destroyed to point where they cannot be reconstructed | A.B. Data's Information Security Policy details physical media destruction requirements which meet industry standards. Electronic media that is being retired from service must be erased using the NIST Data Destruction Standard 800-88 Media Sanitation Procedures. If media is no longer functional, the media must be physically destroyed via shredding, degaussing, hammer, or other physical method to make the media fully unusable and severely difficult for physical reconstruction. |
| Data Destruction | Destruction of all derivative copies and/or back-ups | A.B. Data's Information Security Policy details physical media destruction requirements which meet industry standards. Electronic media that is being retired from service must be erased using the NIST Data Destruction Standard 800-88 Media Sanitation Procedures. If media is no longer functional, the media must be physically destroyed via shredding, degaussing, hammer, or other physical method to make the media fully unusable and severely difficult for physical reconstruction. |
| Applicable Laws, Standards, and Other Regulation | Industry standards: National Institute of Standards and Technology (NIST), HIPAA, FISMA, System and Organization Controls (SOC1 and SOC2) or more advanced assessment, ISO 27001 | A.B. Data follows all applicable local, national, and international privacy regulations. A.B. Data's security team facilitates and monitors compliance with privacy policies. |
| Applicable Laws, Standards, and Other Regulation | Local, national, international privacy regulations (including CCPA) | A.B. Data follows all applicable local, national, and international privacy regulations. A.B. Data's security team facilitates and monitors compliance with privacy policies. |
| Ethical Rules | Administrative policies and/or employee handbook incorporating commitment to ethical rules (e.g., company, court ethical rules) setting forth standards of ethical and legal behavior | All employees are subject to the terms of A.B. Data's Employee Handbook which outlines all employee administrative policies, obligations, and requirements. |
| Ethical Rules | Enforcement clauses, violation resulting in disciplinary action including and up to termination of employment | Consequences of employee breaches of administrative policies is subject to management discretion. |
| Customer Service Measures | Description of settlement website and posting thereto of relevant privacy policies or statements (including portal for reporting suspected loss of confidential data submitted with claim) | All settlement websites contain a link to A.B. Data's privacy policy and, for dynamic websites where A.B. Data collects data, A.B. Data utilize an SSL certificate that authenticates a website's identity and enables an encrypted connection. |

| Category | Control / Question | Response |
|---|---|---|
| Customer Service Measures | Explanation of role of claims administrator and how to prevent phishing (e.g., clear indication that administrator will not request confidential information by e-mail and how to identify a valid email sent from the administrator) | Emails sent to class members are written in concise language, contain prominent links to the settlement website, and include an explanation of how the email is related to a court-approved settlement.  A.B. Data never requests that confidential information by sent over email. A.B. Data also implements certain best practices when disseminating email to minimize confusion and maximize deliverability. For example, the subject line, the sender, and the body of the message will be designed to overcome SPAM filters and encourage readership. Emails are sent in an embedded html text format without graphics, tables, images, attachments, and other elements that would increase the likelihood that the message could be blocked by an e-mail service provider or labeled as SPAM. Emails are also transmitted with a digital signature to the header and content, which allows e-mail service providers to programmatically authenticate that the emails are from A.B. Data's authorized mail servers. |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this date, the foregoing document was filed electronically via the

Court's CM/ECF system, which will send notice of the filing to all counsel of record.

Dated: July 30, 2025                     _/s/ Kristen A. Johnson_
                                         Kristen A. Johnson (BBO# 667261)